IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PMJ BLEU TERRE MANAGEMENT, LLC, | § | |
| | § | |
| | § | SA-22-CV-00166-FB |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| AMTRUST INSURANCE COMPANY OF KANSAS, INC., | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant AmTrust Insurance Company of Kansas, Inc.'s Motion for Summary Judgment [#18]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#5]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **denied**.

**I.  Background**

This is a first-party insurance dispute arising out of alleged damage to a commercial property located at 3503 Crosspoint, San Antonio, Texas 78217 ("the Property") from a wind and hailstorm. Plaintiff PMJ Bleu Terre Management, LLC ("PMJ") is the named insurer under a commercial property insurance policy, PP1058597-00 ("the Policy"), issued by Defendant AmTrust Insurance Company of Kansas, Inc. ("AmTrust"). (Orig. Pet. [#1-4], at ¶ 8; Answer

1

[#6], at ¶ 8.)  PMJ's Original Petition alleges that a wind and hailstorm caused extensive damage to the Property's roofing system, HVAC systems, and exterior and interior on or about May 3, 2021, a date falling within the policy period.  (Orig. Pet. [#1-4], at ¶ 9.)  PMJ filed a claim with AmTrust for coverage under the Policy, which was denied on the basis that the hail damage predated the policy period.  (*Id.* at ¶ 15.)  PMJ filed this suit, alleging claims for breach of contract and extracontractual violations of the Texas Prompt Payment of Claims Act and Texas Deceptive Trade Practices Act.  (*Id.* at ¶¶ 29–39.)

AmTrust has moved for summary judgment, arguing that PMJ cannot prevail on its breach of contract claim because it cannot prove that the damage to the Property resulted from a hailstorm occurring during the policy period.  AmTrust further argues that because PMJ's breach of contract claim fails, AmTrust has no liability for PMJ's extracontractual claims because PMJ does not assert an independent injury underlying these claims.

After filing its motion for summary judgment, AmTrust also filed motions to strike PMJ's designated expert engineer, John McIntyre, and public adjuster, Mark Earle.  After holding a hearing on the motions, the undersigned denied both motions and did not impose any limitation on McIntyre's or Earle's expert testimony.  (Order [#31].)

PMJ has filed a response in opposition to AmTrust's motion for summary judgment, to which AmTrust has filed a reply, and the motion is ripe for the Court's review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The summary judgment record establishes the following facts, which are undisputed unless otherwise noted.  AmTrust issued the Policy underlying this suit to PMJ on July 30, 2020, insuring the Property for a policy period from July 31, 2020, to July 31, 2021.  (Policy [#18-2], at 29.)  On May 17, 2021, PMJ contacted AmTrust to report hail damage allegedly occurring on May 3, 2021, and the claim was assigned to field adjuster Robert Puga with Sedgwick Claim

Management Services and desk adjuster Deniece Dorsey.  (Earle Report [#22-2], at 4; Property Loss Notice [#18-3], at 1.)

After ordering a CoreLogic Hail Verification Report, Puga inspected the Property on May 26, 2021.  (Puga Dep. [#18-5], at 23:12–18, 24:16–23.)  Following the inspection, Puga sent an email to Dorsey on June 16, 2021, recommending reserves be set in the amount of $250,000 for settling PMJ's claim.  (Puga Email [#18-4], at 2.)  Puga issued his formal inspection report approximately one month later on July 15, 2021, estimating the cost of roof replacement at $134,111.20.  (Puga Report [#22-4], at 1.)  However, Puga's report questioned whether the roof damage occurred during the policy period, as the hail verification report Puga obtained suggested there was not a hailstorm at the Property location on May 3, 2021, the date of reported loss.  (*Id.* at 1–2.)  The report also stated that the most likely date of the hail damage was April 12, 2016, a date preceding the policy period by over four years.  (*Id.* at 3.)

Nonetheless, Dorsey sent correspondence to PMJ that same day, stating that Puga had "confirmed there is hail damage to the roof and a payment recommendation [would] be included with the report."  (Dorsey Email [#22-5], at 1.)  Dorsey's subsequent correspondence to PMJ on September 15, 2021, stated that the reason the claim had not yet been concluded was a need for additional information on whether there were any hailstorms at the loss location during the policy period.  (Dorsey Ltr. [#18-12], at 2.)

The record also contains evidence of PMJ's retention of a public adjuster, James Wesselski, who inspected the Property on July 12, 2021.  (Wesselski Report [#22-9].)  Wesselski documented extensive hail damage to HVAC units, interior water stains, and breaches to the roof surface.  (*Id.*)  Wesselski issued a hail impact report, finding that 0.50 inch hail impacted the

Property on May 28, 2021, a date also within the Policy period but occurring after PMJ's filing of its insurance claim.  (*Id.* at 2–5.)

PMJ filed this lawsuit on January 5, 2022, in state court, alleging damage to its roofing system, HVAC system, and the exterior and interior of the Property from a hailstorm occurring on or about May 3, 2021.  (Orig. Pet. [#1-4], at ¶ 8.)  AmTrust removed the case to federal court on February 23, 2022.   Following removal, PMJ retained multiple experts who further investigated the alleged hail damage.  John McIntyre, PMJ's expert engineer, issued an expert report on March 8, 2022, opining that a large storm passed through San Antonio on May 3, 2021 (the date of reported loss), with high winds and hail up to three inches.  (McIntyre Roof Report [#18-14], at 6.)  Based on McIntyre's own inspection of the roof on January 4, 2022, he believed the hail damage he observed was a result of the May 3, 2021 storm.  McIntyre identified numerous surface breaches and dents and cuts in the roof surface, took moisture readings of the roof core and foam covering, and observed water stains on the ceiling and roof beams.  (*Id.* at 8.)

PMJ's weather expert, Greg DeGeyter, however, issued a subsequent report reaching a different conclusion.  DeGeyter's report found that hail had impacted the Property on April 28, 2021, five days prior to May 3, 2021.  (DeGeyter Report [#18-15], at 3.)  DeGeyter based this finding on data from the National Oceanic and Atmospheric Administration ("NOAA), National Weather Service, and Storm Prediction Center data, as well as analysis of NEXRAD-II and III data for station KEWX and AI Weather storm database.  (*Id.* at 3–4.)  DeGeyter concluded that the hail on May 3, 2021, occurred just south of the Property.  (*Id.* at 4.)

After DeGeyter issued his report, McIntyre completed a supplemental report on July 10, 2022, stating he would defer to DeGeyter's opinion that hail struck the Property on April 28, 2021, not on May 3, 2021.  (McIntyre Supplemental Report [#18-16], at 3.)  This report

reaffirmed McIntyre's prior conclusion that hail struck the Property during the policy period, and the damage was therefore covered under the policy.  PMJ's claims handling expert, Mark Earle, issued a report on July 11, 2022, reaching the same conclusion.   (Earle Report [#22-2], at 8.)  Earle, based on DeGeyter's report, also opined that the hail damage to the Property occurred during the policy period.  (*Id.*)

Additionally, Earle opined that AmTrust performed a substandard investigation of the claim, which resulted in gross underpayment of covered damages.  (*Id.*)  Earle stated in his report that the record demonstrates that the field and desk adjuster had "every intention to pay this covered loss" but something transpired to reverse their decision.  (*Id.*)  He also faulted Puga with refusing to change his position that the roof was damaged by a 2016 hail event, despite it being uncontested that the roof was replaced in 2017.  (*Id.*)

Indeed, there are several pieces of evidence in the record indicating that the roof of the Property was replaced in 2017.  A roof warranty dated September 25, 2017, confirms the warranty of the Property's roof for ten years from the date of installation.  (AUR Roofing Warranty [#22-7], at 1–2.)  Additionally, a July 20, 2020 Property Condition Assessment performed just days prior to issuance of the policy states that spray-applied polyurethane foam coating on the roof was applied in 2017, and the roof should have a life of at least 15 years.  (2020 Report [#22-8], at 18.)  Moreover, two time-stamped photographs, one from this assessment and one from an inspection by PMJ's public adjuster, respectively show the absence of hail damage to the fins of PMJ's HVAC condenser on July 1, 2020 (just 30 days prior to the start of the policy period), and the presence of hail damage on the exact same fins on July 12, 2021 (less than two months after the subject loss was reported).  (*Compare* Photograph 35 [#22-8], at 61 *with* Photographs 47–48 [#22-9], at 25 (depicting the same RTU 1 HVAC condenser).)

Finally, there are several weather history reports in the record, some of which document hailstorms at the location of the Property during the policy period in April and May 2021.  A StormerSite Hail History Report documents hail three inches in size near the Property on May 3, 2021, and hail of one inch size on April 23, 2021.  (StormerSite Report [#18-7], at 2–3.)  Both of these storms were within the policy period.   A WeatherGuidance report indicates that hail of 0.5–0.75 inches in diameter occurred at the Property location on April 28, 2021, with wind gusts of 40 to 50 mph during the storm.  (Storm Report [#22-14], at 1.)  Yet a CompuWeather report, which surveyed a site specific hail analysis of the Property for the entire policy period, found "no dates with hail . . . during the period July 20, 2020 to July 21, 2021" but one report of hail within five miles of the Property.  (CompuWeather Report [#18-11], at 3.)

## IV. Analysis

AmTrust asks the Court to grant it summary judgment on all of PMJ's claims.  AmTrust argues it is entitled to summary judgment on PMJ's breach of contract claim because PMJ cannot establish that the hail damage at issue resulted from a hailstorm on May 3, 2021.  AmTrust argues that PMJ's weather expert has conceded that there was no hailstorm on May 3, 2021, at the location of the Property, and it is too late for PMJ to amend its pleadings to change the alleged date of loss to April 28, 2021.  The undersigned disagrees with AmTrust's assertion that DeGeyter's expert testimony that the date of loss was five days prior to May 3, 2021, entitles AmTrust to summary judgment.

AmTrust bases this argument solely on a decision out of the Northern District of Texas, in which the court granted summary judgment for the insurer on a breach of contract claim based on a similar denial of an insurance claim for hail damage.  *See LTG & Assocs., Inc. v. Monroe Indem. Ins. Co.*, No. 4:18-CV-722-A, 2019 WL 1790456, at *2 (N.D. Tex. Apr. 24, 2019).  In

the Northern District case, the insured reported two claims for damage to property, one on April 1, 2015, and one on March 23, 2016.  *Id.*  The insurer denied both claims, concluding that the hail damage predated the policy period.  *Id.*  The insured's expert agreed that no hail damage occurred on the two dates of alleged loss.  *Id.* at *3.  The district court granted summary judgment to the insurer, reasoning that because the complaint alleged specific dates of loss (and not damages occurring generally during the applicable policy period), the insured could not prevail on essential elements of its breach of contract claim.  *Id.*

To prevail on its breach of contract claim, PMJ bears the burden to establish coverage under the policy terms, i.e., that there was a valid contract between the parties.  *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).  Additionally, PMJ must prove that the alleged loss occurred during the policy period for there to be any breach of contract.  *See Stagliano v. Cincinnati Ins. Co.*, 633 Fed. App'x 217, 219 (5th Cir. 2015).

PMJ's Original Petition, which remains the live pleading, alleges that the Property sustained damage from a hailstorm "on or about" May 3, 2021.  (Orig. Pet. [#1-4], at ¶ 9.)  PMJ's various experts agree that a hailstorm occurred at the Property location on April 28, 2021.  April 28, 2021 is a mere five days prior to May 3, 2021, and therefore is "on or about" that date.  No amendment of the pleadings is necessary.  Thus, the reasoning of the Northern District's case, even if correct, would not entitle AmTrust to summary judgment, because the plaintiff in the *LTG & Assocs.* case alleged specific dates of loss, not loss occurring "on or about" a stated date.

Additionally, PMJ timely reported the hail damage within several weeks of the alleged storm.  In *LTG & Assocs.*, the insured waited to report the two alleged dates of loss between six

and ten months after the alleged damage.  2019 WL 1790456, at *2–3.  Also, in communications with PMJ, AmTrust's desk adjusters referenced the need for information regarding whether there were any hailstorms during the policy period; AmTrust itself never limited the scope of its investigation solely to storms occurring on May 3, 2021.  (Dorsey Ltr. [#18-12], at 2.)  AmTrust is not entitled to summary judgment based solely on the testimony of PMJ's experts that the hailstorm causing the underlying damage to PMJ's Property occurred on April 28, 2021, rather than May 3, 2021.

Because PMJ's breach of contract claim should proceed to trial, the District Court should also deny AmTrust's motion for summary judgment as to PMJ's extracontractual claims.  The primary basis for summary judgment argued in its motion is that PMJ cannot recover policy benefits for a statutory violation under the Texas Insurance Code if the insured does not have a right to benefits under the Policy.  The District Court should reject this argument, as PMJ may still recover under the Policy.

The only additional argument for dismissal of PMJ's extracontractual claims is that PMJ cannot prove AmTrust's bad faith where the parties had a bona fide dispute over coverage based on weather reports obtained by AmTrust in evaluating the validity of PMJ's claim.  PMJ did not address this argument in its response to AmTrust's motion to dismiss, but the District Court should still deny the request for summary judgment on PMJ's claim that AmTrust violated its duty of good faith and fair dealing in denying the insurance claim.  The summary judgment evidence reflects that, despite uncontested evidence that the roof of the Property was replaced in 2017, AmTrust's field adjuster concluded that the hail damage to the roof occurred from a 2016 hailstorm.  A reasonable factfinder could conclude on the summary judgment record that AmTrust acted in bad faith in rejecting PMJ's claim based on Puga's recommendation, if the fact

finder agrees this was not a reasonable basis for denying or delaying payment of the claim.  *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997).  In summary, AmTrust is not entitled to summary judgment on PMJ's extracontractual claims.

## V.  Conclusion and Recommendation

Having considered PMJ's motion, the response and reply thereto, the summary judgment record, and governing law, the undersigned recommends that Defendant AmTrust Insurance Company of Kansas, Inc.'s Motion for Summary Judgment [#18] be **DENIED**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain

error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

     **IT IS SO ORDERED.**

     SIGNED this 27th day of June, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE